

U.S. Department of Justice

*United States Attorney's Office*
*District of Delaware*

*Hercules Building*
*1313 N. Market Street, Suite 400*
*Wilmington, Delaware 19801*
*(302) 573-6277*
*FAX (302) 573-6220*

November 14, 2018

**VIA ECF**

The Honorable Leonard P. Stark
Chief United States District Judge
District of Delaware
844 King Street
Wilmington, DE 19801

    Re:    **United States v. Adam Hall**
              **Criminal Action No. 17-58-LPS**

Dear Chief Judge Stark:

On Tuesday, November 20, 2018, the Court will sentence the defendant for Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). In light of the gravity of this offense and the defendant's criminal history, the advisory sentencing guideline range is 87 to 108 months of imprisonment. (November 13, 2018, Presentence Investigation Report ("PSR") ¶ 95)). The parties have agreed to request a sentence within this range (*Id.* ¶ 97), and the government recommends a sentence at the top end – 108 months of imprisonment.

The defendant has a sexual interest in children. And he has repeatedly acted on that criminal interest – both by collecting child pornography and exposing himself to young girls. A sentence at the top end of the guidelines is warranted to punish the defendant for his actions and protect the public.

1

As set forth in the PSR, the defendant was taken into custody shortly after masturbating in front of his 14-year-old female cousin. *Id.* ¶ 20. The incident occurred in the backseat of a van, while the victim's grandparents drove the defendant to work. Too scared to say anything during the event, the victim broke down and cried shortly after the defendant left the vehicle. *Id.* She then explained to her grandparents that the defendant "unzipped his pants," "exposed his penis," and stroked it "up and down" while sitting next to her. *Id.* ¶ 21.

After the authorities were alerted, the defendant was arrested. On his person was a cell phone that contained child pornography on the "lock screen" – brazenly visible for anyone to view. *Id.* ¶ 22. After a forensic review of the phone, law enforcement located over 400 other images of child pornography. *Id.* ¶ 24. Most of these images were of girls under 10. *Id.* Two were of pre-teen girls tied up at the ankles and wrists. *Id.*

The defendant created these images himself using his PlayStation 4 ("PS4") console and smart phone. *Id.* ¶ 26. In particular, the defendant utilized his PS4 to access "underground teen porn" websites. *Id.* After coming across "images of girls who were under ten years of age and engaging in sex acts," the defendant took "photographs of these images with his cellular phone," which he then "saved for later." *Id.*

Importantly, the offense conduct in this case is part of an escalating pattern of behavior. The defendant committed these offenses a mere sixteen months after serving a ten-year prison sentence in Georgia for exposing himself to two minor girls. *Compare id.* ¶ 51 (release date 8/18/14) *with id.* ¶ 20 (new offense date of 1/4/16). Although he was initially released after serving just two years on this offense, the defendant quickly violated his probation by initiating unsupervised contact with two underage girls and "making lewd gestures with his tongue," as well as visiting a park where "children are known to congregate." *Id.* ¶ 52. He was sentenced to serve the balance of his time as a penalty. *Id.* This backdrop is important, as a "defendant with a record of prior criminal behavior is more culpable . . . and thus deserving of greater punishment." U.S.S.G., Ch.4, Pt. A, intro. comment (Nov. 2016). Moreover, "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." *Id.*

Nevertheless, the defendant will likely argue that he is capable of reform and, as a result, he should receive a sentence at the low-end of the guideline range. In particular, the defendant has submitted an evaluation by Stacy Huffman, a Clinical Social Worker, wherein she opines that the defendant has a "compulsion for exhibitionism," is "amenable to treatment," and it is "highly unlikely that he would escalate to a contact offense." *Id.* ¶ 79.

At best these claims are speculative. At worst, they are contradicted by empirical evidence. Although some will argue that exhibitionists are "harmless, hands-off offenders whose behavior represent[s] more of a nuisance than a serious criminal justice problem," the data shows the contrary. Philip Firestone *et al.*, *Long-term Follow-up of Exhibitionists: Psychological, Phallometric, and Offense Characteristics*, 34 Journal of the American Academy of Psychiatry and the Law 349, 349-359 (2006), http://jaapl.org/content/jaapl/34/3/349.full.pdf. Indeed, based on data gathered from 208 exhibitionists who were observed over a 13-year period, researchers concluded the following:

> Perhaps the most important finding is that exhibitionism is not a benign act and should be dealt with seriously. Men who exhibit may be at high risk for more serious offensive behavior. It is apparent that approximately 39 percent of our sample went on to commit other offenses, with approximately 31 percent committing a sexual or violent offense.

Id. at 358. And as the researchers acknowledged, these figures are likely an under-representation of the true danger that an exhibitionist will recidivate; as with all sex offenders, "the real rates of re-offending are dramatically higher" than those actually reported. *Id.* at 349.

In sum, the defendant's conduct in this case was serious and dangerous, and comes on the heels of similar conduct. A sentence at the high-end of the guidelines is appropriate.

    Respectfully submitted,

    DAVID C. WEISS
    UNITED STATES ATTORNEY

BY:  /s/ Shawn A. Weede
    Shawn A. Weede
    Assistant United States Attorney

cc:   Dina Chavar, Esquire (via ECF).